### Smith v. The Commonwealth.

(Decided January 12, 1911.)

### Appeal from Christian. Circuit Court.

1. False Prentenses.—Indictment for, should charge in terms or substance that the person defrauded relied upon the truth of the false statement, pretense or token, and was induced thereby to part with his money or property.
2. False Pretenses—What Constitutes Offense—Instructions.—Where a person, upon the representation that he is the owner of personal property and has it in possession, obtains money on the faith of it, he is not guilty of obtaining money under false pretenses if at the time the representation was made he was in fact the owner of the property and did have it in his possession, although he may not repay the money or deliver the property to the person to whom the representation is made; and the jury should be instructed accordingly.

·C. H. BUSH for appellant.

JAMES BREATHITT, Attorney General, and TOM B. M'GREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellant Smith, under an indictment charging him with the crime of obtaining money under false pretenses, committed as follows, to-wit: "That said Smith did in the county and State aforesaid, on the 22d day of September 1909, and before the finding of this indictment, wilfully and feloniously say and represent to J. P. Thompson that he had purchased 750 sticks of tobacco from G. W. Blankenship, and said tobacco was then his

property and then in his possession, and relying upon said statements as true and believing in the truth of same, the said Thompson advanced said Smith upon said tobacco thirty-five dollars in lawful money of the United States, which he accepted, and for which he had made said statements, when in truth and in fact he had not purchased 750 sticks of tobacco from said Blankenship, and did not have the same, or any tobacco in his possession bought of G. W. Blankenship at that time, and when said statements were false and untrue, and were known to said Smith to be false and untrue at the time he made them as aforesaid'' was convicted, and his punishment fixed at confinement in the State penitentiary for one year.

The indictment was found under section 1208 of the Kentucky Statutes, reading:

''If any person by any false pretense, statement or token, with intention to commit a fraud, obtain from another money, property or other thing which may be the subject of larceny, or if he obtain by any false pretense, statement or token, with like intention, the signature of another to a writing, the false making whereof would be forgery, he shall be confined in the penitentiary not less than one nor more than five years.''

It is earnestly insisted that the indictment is fatally defective and the court erred in failing to sustain a general demurrer to it. Its sufficiency is assailed upon the ground that it does not in apt terms charge that Thompson relied upon and was induced to furnish the money to Smith upon the faith of his representations as to the ownership of the tobacco, or aver that but for said representations he would not have advanced the money. It has been frequently held by courts and announced by writers on criminal law, in considering the sufficiency of indictments under similar statutes to ours, that the indictment should charge in terms or substance that the person defrauded relied upon the truth of the false statement, pretense or token and was induced thereby to part with his money or property. Barton vs. People, 35 Ill., 573, 10 L. R. A., 302; State vs. Miller, 47 Ore., 562; 6 L. R. A., n. s., 365; Bishop on Criminal Law, vol. 2, secs. 415, 462; Wharton's Criminal Law, vol. 2 sec. 1215; 19 Cyc. 429; 12 Am. & Eng. Ency. of law page 819. But although the indictment must show that the person defrauded was induced by the false representation or statement to part with his money, it

is not essential that the indictment should in addition to this charge that except for such statements or representations the victim would not have parted with the money. If he was induced by the false statement to part with his money, it follows that he would not have done so except for the false statement, and so it seems unnecessary that both averments should be made. Each is merely stating the same proposition in different words, or in a different way. Because, if a person would not have parted with his money unless he believed the statement to be true, neither would he have parted with it unless he was induced to do so by the statement. Nor is it a matter of first importance what particular words are used to show that the person defrauded relied upon the truth of the false statement and was induced thereby to part with his money. Any words that express this idea or from which it can be clearly inferred will be sufficient. In short, the purpose of an indictment is to inform the defendant in ordinary language of the nature of the charge against him, or, as said in section 122 of the Criminal Code, it is:

"A statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case."

And when the statute does not prescribe the form of indictment, or the words that shall be used, it is only necessary that it conform to the general rules of law applicable to such indictments, and be so plain and explicit that there cannot be any reasonable doubt as to its meaning. The indictment being considered, averred that Thompson "relying upon said statements as true and believing in the truth of same" advanced the money. This was in substance saying that Thompson was induced by the statements, which he believed to be true, to advance the money, and in effect a charge that he would not have advanced it except for the fact that the statements were made and he believed them. The accused, assuming that he had ordinary intelligence, could not fail to understand, after reading the indictment, the nature of the charge against him. Nor could the court have any difficulty in pronouncing judgment, as the indictment contains every averment necessary to constitute the offense charged.

It is said, however, that the indictment does not come up to the standard laid down in Bryant vs. Commonwealth, 104 Ky. 593. In that case the indictment was fatally defective as there was no averment that Terry in parting with his goods relied upon the truth of the representations made or was induced by them to give the credit. It is true, it is said in the opinion that "the indictment was fatally defective in failing to clearly and specifically allege that the party who parted with his goods or gave the credit relied upon the representations, and that but for said statements would not have extended credit or parted with his goods, or similar allegations."

· But we do not think the Court intended to hold that the indictment was defective because it did not charge that "but for said statements would not have extended credit or parted with his goods," or to say that this averment was necessary in addition to the averment that the party defrauded relied upon the truth of the statements and was induced thereby to part with his property. Being of the opinion that the indictment is sufficient, we will now consider the question of whether or not the court properly instructed the jury.

The record shows practically without dispute that in September 1909 appellee Smith represented to J. P. Thompson that he had purchased 750 sticks of tobacco from G. W. Blankenship, which was then his property and in his possession. It is further shown that G. W. Blankenship raised, with the consent of Smith and upon a farm rented by Smith, about 750 sticks of tobacco, and that this tobacco as well as some other tobacco raised on the place was in Smith's barn at the time the money was obtained. There is some evidence that Smith previous to obtaining the money from Thompson had bought this tobacco from Blankenship, and that he paid the wife of Blankenship twenty dollars on the purchase price of the tobacco, or at least advanced to her this sum on the faith of it. In short, we may safely say there is some evidence that Smith at the time he obtained the money from Thompson had bought Blankenship's tobacco, and that it was in his possession. The tobacco of Blankenship with the other tobacco raised by Smith and others on the place remained in the barn until the spring of 1910, when all of it was levied upon by an officer under a process issued to secure the landlord's rent. After it was levied upon, all of it, including the Blankenship to-

.bacco, was taken to Cooper's warehouse in Hopkinsville, and there sold. But it appears that the tobacco, other than the Blankenship tobacco, realized sufficient to pay the rent, and so the proceeds of this tobacco amounting to some thirty-five dollars was paid by the warehouse people partly to Smith and partly to the wife of Blankenship, but none of it was paid to Thompson. That Smith committed a breach of trust in failing to repay to Thompson the money advanced by him, is not open to question. But the guilt of Smith, if he was guilty, consisted in the fact that he had not bought and did not have in his possession in September 1909 Blankenship's tobacco, and not in the fact that he did not repay to Thompson · the money or deliver to Thompson the tobacco. If in truth Smith was the owner of the tobacco, and it was in his possession at the time he obtained the money from Thompson, he was not guilty of obtaining the money under false pretenses, although he may not have repaid to Thompson any part of the money or have delivered to him any part of the tobacco. The fact that he failed to pay Thompson the money or failed to deliver to him the tobacco, was, as we have said, a breach of trust but it was not sufficient to establish his guilt under the indictment. As it was the duty of the trial court to instruct the jury upon the whole law of the case, he should have instructed them in substance that if they believed from the evidence that Smith before he obtained the money from Thompson had purchased the tobacco from Blankenship and it was then in his possession, they should find him not guilty, although they might believe from the evidence that he had not paid to Thompson any part of the money advanced or delivered to him any part of the tobacco.

Upon another trial the court in addition to the instructions given will submit the one indicated.

Wherefore the judgment is reversed with directions for a new trial in conformity with this opinion.