## Rand v. Commonwealth.

(Decided June 15, 1917.)

### Appeal from Lewis Circuit Court.

1. **False Pretenses—What Necessary to Constitute Crime.**—To constitute the crime of obtaining money by false pretenses, the following essentials must appear: (1) A false pretense; (2) The false pretense must be made by the defendant or by some one whom he had induced to make it; (3) The defendant must have had knowledge of the falsity of the pretense, statement or token, when he made it; (4) The person defrauded must have relied upon the pretense and been induced to thereby part with his money; (5) The money must have been obtained by the defendant or by some one in his behalf; (6) The defendant must have had an intent to defraud; (7) An actual defrauding must have resulted.

2. **False Pretenses—What Necessary to Constitute Crime.**—To constitute the crime of obtaining money or property by false pretenses, an actual defrauding must take place, but it is not necessary that an actual pecuniary loss be suffered, or that it will necessarily be suffered, but it is sufficient, if the defrauded party be placed by the false pretense of the accused, in such a position, that he may eventually suffer loss.

3. **False Pretenses—Knowledge of One Parting With Money.**—As between individuals, if the party who parts with the money knew

the falsity of the pretense, he was not deceived thereby, and did not rely thereon, and hence the crime is not committeed, but, when money is obtained from a municipality by a false pretense, the fact that one or more of the officials, who have custody of the funds, and pay them out, knew the falsity of the pretense, will not relieve the accused of his part in the fraud, because he was assisted by the fraud or connivance of the officials.

4.    False Pretenses—Indictment and Information.—Where an indict· ment charges the obtaining of money by false pretenses from· a county, the fact that the county court, by reason of the false pre- tense, made an order directing the treasurer to pay the money, which he did, does not constitute a fatal variance between the allegations and proof, as the accused received the money and the order of the county court was, only, the means through which the county paid the money to him.

5.    Criminal Law—Presumption of Knowledge of the Law.—While every one is presumed to know the law, as to criminal offenses, as well as civil liabilities, where a specific intent is necessary to constitute a criminal offense, the want of knowledge upon the part of the accused, that his action was contrary to law negatives the idea that he had the specific criminal intent necessary to constitute the crime.

6.    False Pretenses—Intent—Element of Offense.—To be guilty of ob- taining money by false pretenses, a specific intent· to defraud is necessary.

ALLEN D. COLE, SAMUEL J. PUGH and R. D. WILSON for ap- pellant. ·

M. M. LOGAN, Attorney General, and CHARLES H. MORRIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This is a companion case to that of Ivan W. Sanders against the ·Commonwealth of Kentucky, the opinion in which was rendered on a previous day of the present term of this court, and may be found in 176 Ky. 229, and wherein nearly all of the facts upon which this cause is based are set out at length, and a reference is made to that opinion for the facts of this case, which are not herein stated.

The indictment is against the appellant, Ed. Rand, and Ivan W. Sanders, jointly, and accuses them of the crime of obtaining money, by false pretenses, from Lewis county, in the sum of two thousand dollars. The trial resulted in the conviction of the· appellant, Ed. Rand, and a judgment sentencing him to a term of imprisonment in the state reformatory.

1. He insists that the court was in error in overruling a general demurrer to the indictment. The grounds upon which he insists that the demurrer should have been sustained are:

(a) That in order to make a sufficient indictment for the crime charged, it should have been alleged, that the person from whom the property was obtained, would not have parted with it, but for the alleged false token, statement or pretense; and (b) because the order signed by the county court clerk, which was presented, ultimately, to the treasurer of Lewis county by the Citizens Bank of Vanceburg, was not a false pretense or token, but a writing signed in good faith.

With regard to the first ground for demurrer relied upon, an indictment for false pretenses is sufficient, if it alleges that the person, defrauded, relied upon the truth of the false statement, token or pretense, and was induced thereby to part with the property or money. Bishop on Criminal Law, vol. 2, sections 415, 462; 19 Cyc. 429. The indictment, in the instant case, specifically, alleges that the representatives of the municipality of the county, who had the control and custody of the money of the county, and which it was alleged that the appellant fraudulently obtained by false pretenses, relied upon the alleged false statements and representations, and paid to appellant the money, and that he obtained the money by reason of the false statements and representations. This is a substantial averment, that the defrauded party, relying upon the false statement and representation, was thereby induced to part with the money. It is not necessary, in such an indictment, to use any particular words in alleging that the party defrauded relied upon the truth of the false statements and was induced thereby to part with his money or property. If it was substantially alleged, in any words, which conveyed that meaning, the indictment will be sufficient. Smith v. Com., 141 Ky. 534. As regards the second ground, which is relied upon as making the indictment subject to demurrer, the indictment charges that the property obtained by the false pretenses was two thousand dollars in money, and there is nothing in the indictment with reference to any order signed by the county clerk, and which was obtained by the false pretense, for which the appellant was indicted.

The indictment, in substance, charged that the appellant and Ivan W. Sanders, who, as the county road engineer, feloniously and corruptly conspired to cheat and

defraud the county of Lewis, out of money, and in furtherance of such conspiracy and while it existed, they fraudulently, falsely and feloniously stated and represented to the county judge, the members of the fiscal court and the treasurer, with the purpose and intention of defrauding the county, and that the said representatives of the county should rely thereon, that appellant had provided and used upon the public roads of the county and for its use and benefit twenty thousand feet of lumber, board measure, and that the county was indebted to appellant therefor, at the sum of ten cents per foot, or the total sum of two thousand dollars, and that such claim was just and correct, and presented a claim against the county therefor and demanded its payment, and the said officials relying upon the representations and believing them to be true, paid to appellant the money claimed; that he obtained the money through and by the false statements and representations and the false claim, when in fact and truth the appellant had not provided, furnished, or used upon the public highways any lumber, and the county was not indebted to him in any sum therefor, and appellant and Sanders well knew, at the time they made the statement and representations and presented the claim and made demand for its payment, that the representations and statements made by them were false and untrue, and that appellant had not furnished the lumber and that the county was not indebted to him therefor in any sum.

To constitute the crime of obtaining money or property by false pretenses, the following things must appear: (1) A false pretense; (2) the false pretense must be made by the defendant, or by some one, whom he has induced to make it; (3) the defendant must have had knowledge of the falsity of the statement, token or pretense when he made it; (4) the person defrauded must have relied upon the pretense and been induced thereby to part with his property or money; (5) the property or money must have been obtained by the defendant or by some one in his behalf; (6) the defendant must have had an intent to defraud; (7) and lastly, an actual defrauding must have resulted. 19 Cyc. 393. The indictment, in substance, contains averments, by which are alleged all of the above essentials to the commission of the crime of obtaining money or property by false pretenses, and hence the demurrer was properly overruled.

2. The appellant, at the close of the evidence for the Commonwealth and at the close of all the evidence, moved the court to direct a verdict in his favor, both of which motions the court overruled, and it is now insisted that this was error. Four grounds are relied upon for this contention.

(a) It is insisted that it was no part of the duty of Sanders, as road engineer, to make a statement of the claim of Rand, as the county of Lewis was not indebted to Rand and had no contractual relations with him, and hence the statement and certification made by Sanders and presented by Rand to the county court, which, together with the statement of appellant accompanying the certificate, was not a false pretense, as it should not have, in any way, deceived the county court and the county judge should not have relied thereon. This contention is fully discussed and disposed of in the opinion of Sanders v. Commonwealth, and it is unnecessary to here advert to it.

(b) It is, likewise, claimed, that the claim of Rand when presented to the county court was approved by the county judge and not by the county court, and there was no order or warrant of the county court, signed by the judge thereof, directing its payment, but merely an order signed by the clerk of the county court, and hence the treasurer was not authorized to pay same, and the county did not part with or lose anything by the payment, as it could yet require its treasurer to account for same. It is true, that to commit the crime by obtaining money by false pretenses, an actual defrauding must take place, but it is not necessary to constitute the crime that actual pecuniary loss be suffered, or that it will necessarily be suffered, but if the party defrauded has been placed by the false pretense of the accused, in such a position that he may eventually suffer loss, is sufficient to support the charge. It is patent, if the false pretense of appellant caused the county treasurer to part with the money of the county to him, and although the county may yet be able to recover its losses from the treasurer or from the appellant by a civil action, upon the ground that the treasurer was not authorized to pay it out to appellant nor appellant authorized to receive it, still the county has been placed in a position that it may eventually suffer the loss. An actual loss is not necessary to make out the crime, and hence it is not a defense that the county may hereafter recover for any loss it sustained. If an

individual has been 'defrauded by a false pretense and caused to part with his property, the perpetrator of the fraud cannot escape the consequences of his crime by showing that the defrauded person, after the perpetration of the fraud and the loss of the property by him, in some way succeeded in recovering the property, or had by suit recovered its value from the defrauder. The false statement, as we understand the record, when it was presented to the county judge, who is the judge of the county court, and which is always in session for the transaction of such business as approving and ordering the payment of the character of claim presented by appellant, it was a presentation of it to the county court, and an order of such court directing the payment of such claim by the treasurer signed by the judge of that court is a substantial compliance with the statute. A mere irregularity by the officers of the municipality would not avail the appellant anything, if the false pretense made by him was relied upon by the officers of the municipality and they were thereby caused to part with the money of the county to him, because the fraud upon his part would be no less, because those in control and custody of the county funds paid the false claim to him in an irregular way in the belief that they were complying with the requirements of the law, and although the county, by reason of such irregularities, might thereafter be able to recover its losses from some one.

(c) It is, also, insisted, that the county judge, who approved the false claim and ordered its payment, was not deceived in any way by the statement or representations to him, and that he fully understood its contents and the facts in regard to it, and hence the charge of obtaining the money by a false pretense must necessarily fail, because the county judge did not rely upon the alleged false token or pretense and was not thereby induced to approve the false claim and direct its payment. This is a correct principle when applied to transactions between individuals, there is no doubt. As between individuals, if the party claiming to be defrauded knew that the pretense was false, he necessarily did not rely thereon and was not induced thereby to part with his property, and in such case the crime of obtention of money or property by false pretense is not committed. The evidence, however, does not show, that the county judge knew the falsity of the pretense. However, the party alleged to have been defrauded, in the instant case, was Lewis county. The money of which it was defrauded,

if defrauded at all, was in the custody of the treasurer, and there is no claim that the treasurer had any knowledge of the falsity of the pretense by which it was obtained. The county judge was an official of the county, with authority to order the payment of the alleged false claim, and the fraud perpetrated, if at all, upon the municipality was no less on account of the knowledge of the county judge, or because he connived at it, if he did so, as the real crime, if committed at all, was against the municipality and not against any of its officials, and the appellant would not be relieved for his part, in a fraud against it because able to accomplish it with the assistance or connivance of any official.

(d) It is claimed that a fatal variance exists between the allegations of the indictment and the proof, which entitled appellant to a directed verdict in his favor. The indictment charges the appellant with having obtained money from the county by a false pretense, and it is claimed that the proof shows that what he obtained by the false pretense was an order of the county court, by which the treasurer was directed to pay to him the money; that he assigned this order to a banking institution, which transferred it to another bank, which received the money from the treasurer. A municipality must necessarily have certain machinery, which must necessarily be resorted to when its funds are paid out, and the use of such means must be contemplated by any one who seeks to obtain money from it. In the instant case, a road claim must be stated and certified by the road engineer, and when presented to the county court, an order is made directing its payment by the treasurer, which, when presented to the treasurer, the money is received. What the appellant obtained from the county by his false pretense was money, and the order of the county court, and its transfer by him to a bank, was only a part of the necessary steps in the payment of the money, though he might have presented the order directly to the treasurer, but the fact that he transferred the order to another before it reached the treasurer would not and could not acquit him of his fraud as the order was only one of the steps in making payment by the county. Hence, this contention is altogether untenable.

(e) The false pretense, statement or token complained of, in the instant case, was the statement of the account of the appellant against the county for the construction of a public highway, and which, under sections

1207 and 4333, Kentucky Statutes, it was the duty of the
road engineer, Sanders, to make out and certify to the
correctness of, and the contention for the Commonwealth
is made, that he, at the instigation of the appellant, and
in conspiracy with him to defraud the county, made out
and certified to the county court a false and fraudulent
statement of the work done by appellant and the sum
to which he was due, with the fraudulent intent to obtain
or to enable appellant to obtain money from the county,
to which appellant was not entitled, and the particular
item relied upon in the indictment, as constituting the
false pretense, and which appellant is called upon to
answer, is, that the statement contained a charge against
the county for twenty thousand feet of lumber, board
measure, at ten cents per foot, which was represented
had been used by appellant in the construction of two
small bridges upon a public highway of the county and
for which he was entitled to receive a total sum of two
thousand dollars from the county, when in fact appellant
had not used any lumber upon any public highway of
the county and was not entitled to receive any sum there-
for, and that these facts were well known to the appel-
lant when the statement of the account was made out by
Sanders and presented by appellant to the county judge.
The statement relied upon for conviction was the one
made out on December 30th. By a reference to the opin-
ion in Sanders v. Com., *supra,* it will be seen that ap-
pellant was a sub-contractor under one Jones and that
Jones had a contract, which had been entered into with
him by the fiscal court, by which he was to reconstruct a
public highway in accordance with plans and specifica-
tions on file and which had been prepared by a represent-
ative of the road department of the state; that Jones
was to do all the work of excavating for a lump sum of
$11,063.95, but for the construction of the bridges upon
the road he was to be paid according to quantities, among
which items was one for "lumber in place," at the cost
of ten cents, per foot, board measure. Upon the route
for the road, which was covered by the plans and specifi-
cations, there were to be erected two bridges, one of
which was to have a span of twenty feet. After this
road had been surveyed and plans and specifications pre-
pared for its construction, an agitation arose among the
residents along the road to have the route of it changed,
in part, so that the road would be situated above the
ordinary rises in the waters of the Ohio river. Jones, in

making his bid to the fiscal court for the contract to construct the road, embodied in his proposal a proposition to make such changes as were suggested by the road engineer, so as to place the road upon ground, which would be elevated above the ordinary rises of the water in the river, and would make such change in the route for the total sum, bridges considered, as the road constructed according to the prepared plans and specifications upon the original route was to cost. This proposition was accepted by the fiscal court and the contract let to Jones, with the stipulation above mentioned embodied in it. The road engineer gave directions to Jones, in writing, for the construction of two small bridges, which would be necessary upon the route to which the road was changed by the suggestion of the engineer, and this dispensed with the construction of the bridge with the twenty foot span. Jones sub-let to the appellant that portion of his contract, which applied to the building of the bridges, and directed the county to pay to appellant such portion of the contract price, as would be due him for the construction of the bridges. This contract between Jones and appellant, at the suggestion of the judge of the county court, was placed on file in the office of the clerk of the county court. Jones' contract provided for the payment of monthly installments in accordance with the progress of the work, and on December 30th, the appellant procured Sanders, the road engineer, to make out a statement of what was due him, under the contract, for work done and materials furnished up to that time. The road engineer, it seems from his statements and those of appellant, did not undertake to embrace in his statement the materials actually used in the construction of the two small bridges upon the route to which the road was changed, but undertook to make a statement of the lumber which would be necessary to be used in the construction of the large bridge on the original route, and stated and certified that amount, as the amount due for the construction of the two small bridges, and which appellant, under his contract, was entitled to receive from the county. Under the terms of the contract, it seems that the fiscal court had agreed and the appellant was entitled to receive for the construction of the two small bridges upon the changed route the same total sum to which the contractor would have been entitled to receive for constructing the large bridge upon the original route. It is now insisted for appellant, that a directed verdict

should have been ordered in his favor, because the evidence conduced to show that the statement, which was relied upon as the false pretense as regarded the amount of the lumber for which he was entitled to receive pay, was not in excess of the amount for which he was entitled to receive payment under the contract. However, the evidence is not altogether to that effect, and for the same reasons as stated in the case of Sanders v. Com., *supra,* the motion for a directed verdict, upon the evidence appearing in the record, should have been, as it was, overruled.

3. The instructions to the jury are clearly erroneous. The first instruction has the fault of being so lengthy and involved, that it is difficult of comprehension to a layman, and requires great time and study to ascertain its meaning. It is misleading, in that it frequently apparently assumes, that the statement of the engineer, which was presented to the county court by Rand, and which is the false pretense upon which the prosecution is based, was false and untrue, which was a fact to be determined by the jury from the evidence. It, also, improperly submits to the jury as to whether or not the statement is false and untrue in regard to items, other than the item for lumber, although the indictment only charges the statement to be false and untrue in regard to the item of lumber. Instructions two and four, except the definition of a criminal conspiracy contained in instruction two, are abstract declarations of law relating to the duties and powers of the fiscal court and road engineer, and from them the jury was obliged to infer, that if the fiscal court or the road engineer undertook to exceed their powers or the fiscal court to make any unauthorized contracts, the appellant, acting under one of these contracts, although honestly of the belief that he had a valid contract and that the fiscal court had not exceeded its powers in making it, yet, he would be criminally liable for making a demand upon the county for what he honestly believed he was entitled to receive from the county, under the contract. The court below seems to have overlooked the distinction between a civil liability and a criminal one. There is no pretense, that the claim, which Rand made upon the county, arose otherwise than out of a contract made by the fiscal court, whether valid or not. The plans and specifications prepared for the construction of the road on its original location provided for two bridges, one a small bridge

and the other a large one with a twenty foot span, as before stated. Appellant, in carrying out his contract with Jones, constructed the small bridge provided for on the original route, but the change in the route dispensed with the necessity of building the larger bridge as stated, and made necessary the two small bridges on the route as changed. The change in the location of the road made a large amount of more grading and excavation necessary than was necessary on the original route, but the building of the two small bridges on the changed route required much less material and less cost to the contractor than the large bridge on the original route would have required. By the terms of this contract, if valid, and the sub-contract of appellant, he was entitled to receive from the county for the construction of the small bridge on the original route the cost of the materials actually used in its construction, at the "bid unit" prices, including the item of lumber, but for constructing the two small bridges on the route as changed, he was entitled to the same sum from the county as he would have been for the construction of the large bridge on the original route. The contract between the fiscal court and Jones was not invalid, because at the time of its making, the county court had not then established a public highway along the route of the change, suggested, as it was within its authority, yet to have done so. If the statement and certification made by the engineer did not represent that appellant was entitled to a greater sum from the county than he was entitled to receive, under the contract, at the time of its presentation, there could be no false pretense attributed to the appellant, in the absence of knowledge upon his part that the fiscal court and the engineer had exceeded their authority in having the road changed. So much of the contract as authorized appellant to build the small bridge on the original location of the road was certainly authorized and valid. While it was beyond the authority of the fiscal court or the road engineer to provide and pay for the two small bridges built upon the changed location of the road, and where the county court had not established at that time a public highway, and while every man is presumed to know the law relating, both to civil rights and to criminal liability, where, to the commission of a crime, it is necessary for the perpetrator to have a specific intent to commit such crime, the fact that the accused was unaware that his action was contrary to law, and where he was in the honest belief that

he was doing no more than he was entitled to do, it negatives the idea, that there existed the specific intent, upon his part, to commit the crime, and without this specific intent the crime cannot be committed. In 19 Cyc. 413, with reference to the crime of obtaining money by false pretenses, the text is as follows:

"Under the common form of the statute, a specific intent to defraud is essential to the commission of the crime."

And in 12 Cyc. 156, with reference to the presumption, that every one is acquainted with the law, the text is as follows:

"An exception to the general rule exists where a specific intent is essential to the crime, and ignorance of the law negatives the existence of such intent, as where a person charged with larceny or robbery believed the property to be his own." Com. v. Stebbins, 8 Gray 492; People v. Husband, 36 Mich. 306.

In the instant case, it does not appear that the appellant should be presumed to be better advised as to the law relating to the building of the public highways than the county judge, the members of the fiscal court and the county attorney, all combined. The certificate of the road engineer, which is the alleged false pretense, recites that "as said contract provides for partial payments as the work progresses, your engineer desires to make the following report as to the amount of work done and for which payment is due." One of the items is the "to 20,000 ft. forms, 10c per ft., $2,000.00." If appellant, without fraud and honestly believing, that he was entitled to receive payment for that sum for lumber, under the contract, at the time the certificate was presented to the county court, he would not be criminally liable. The court, instead of the first instruction, should give one, which submits to the jury the essential things necessary to constitute the crime of obtaining money by false pretenses, in accordance with the allegations of the indictment, and instead of instructions two and four, it should substantially instruct the jury, that in accordance with the terms of the contract, under which, appellant made the claim alleged to be a false pretense, that he was entitled to receive payment for the lumber actually used by him in the construction of the small bridge upon the original route of the road, at ten cents per foot, board measure, and that for the construction of the two small bridges upon the route to which the road was changed, he was entitled to be paid for such quantity of lumber

as would have been necessary to construct the large bridge on the original route, and if he, in good faith, believed that the contract between the fiscal court and Jones and the sub-contract between Jones and himself authorized the building of the two small bridges on the changed route, and the county to pay therefor the sum claimed by him as due under the contract, at the time the certificate of the engineer was made and presented to the county court, and that no greater sum was stated in such certificate as due him under the contract, than he honestly believed was due him from the county, that the jury should find him not guilty.

That portion of instruction two, which defines a criminal conspiracy, is not objectionable. It should, also, be borne in mind, that, although in order to constitute guilt of one accused of obtaining money or property by false pretenses, the accused should have knowledge of the falsity of the pretense, and that making a statement recklessly and without information justifying a belief in its truth is equivalent to the making of a statement, knowing it to be false.

4. The appellant, upon another trial, should be permitted to give in evidence the contract between Jones and the fiscal court, and the orders of the fiscal court pertaining thereto and, also, the paper denominated contract and dated October 29, 1915, and which provided for the contsruction of the road regardless of the approval of the Commissioner of Roads, and which was signed at the same time that the contract was let to Jones, as an evidence bearing upon appellant's good faith in what he undertook to do under what he considered to be the contract, as this writing, as was testified by appellant, he considered as constituting a part of the contract attempted to be made. The statement of J. M. Henry, as to the amount of lumber necessary for the construction of the large bridge on the original route, if properly authenticated, and shown to have come to the knowledge of appellant before the certificate of the engineer was presented to the county court, may, also, be read in evidence as bearing upon his good faith in the statement as to the amount of lumber for which he was entitled to be paid, under the contract. The letter of Sanders to Jones, dated October 29, 1915, relating to the suggested changes in the plans and specifications, should, also, be allowed in evidence. The oral statements made by appellant or by any one in his presence

to the county judge, at the time the certificate of the road engineer, of date December 30th, was presented to the county judge, with reference to the item of lumber embraced in the certificate, should be admitted as evidence, as tending to be explanatory of the intent and motives of appellant in making the claim and demand. The appellant should, likewise, be allowed to give in evidence the suggested changes by the engineer under the Jones contract, and under which the two small bridges were built on the changed location of the road, and he should, also, be allowed to testify to the construction, which he placed upon his contract with Jones and the contract of Jones with the fiscal court, as the intention of the accused is always an essential element in the commission of a crime. The contract between appellant and Jones should, also, be allowed to be given in evidence. Under the view which is here taken of the case, whatever tends to show good faith on the part of appellant or want of good faith upon his part is competent evidence to go to the jury.

The avowed order of the fiscal court approving the payment by the county court of the amount of appellant's claim embraced in the certificate of the engineer, of date December 30th, is not material and was properly refused to be allowed in the evidence, as the Commonwealth relied for conviction upon the statement of the engineer, of date December 30th, and as any action by the fiscal court after that time would not shed any light upon the intent of the appellant and his action prior to that time. Conversations and discussions held in the fiscal court and desultory conversations with the individual members of the fiscal court are not competent evidence for any purpose, because the court can only speak by its records. Any facts tending to show the establishment by the county authorities of the road over the changed route, previous to the date of the false pretense relied upon for conviction, may be given in evidence, but the use of the changed road as a public highway since the date of the false pretense or steps taken by the county authorities in relation to it, since the date of the false pretense, are not material, as they would shed no light upon the motives and good faith of the appellant in making the pretense, which is alleged to be false.

For the reasons above given, the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.