# Wright v. Inter-Southern Life Insurance Company.

(Decided February 17, 1922.)

## Appeal from Letcher Circuit Court.

1. Bills and Notes—Want of Consideration—Burden of Proof.—The burden is upon the defendant in a suit on a note to prove want of consideration and false and fraudulent representations alleged to have been made to procure the execution of the note, and, although the alleged representations may be proven, if there is a want of proof as to their falsity the defense will fail.

2. Appeal and Error—Finding of Chancellor.—The judgment of the chancellor on an issue of fact will not be disturbed unless this court is convinced that his finding is contrary to the evidence even though we should be in doubt as to the truth of the matter.

MORRIS & JONES and DAVID HAYS for appellant.

JOHN M. COOK for appellee.

Opinion of the Court by Judge Thomas—Affirming.

The plaintiff (appellee), Inter-Southern Life Insurance Company, sued the defendant (appellant), John W. Wright, on a note for $1,000.00, which he executed on November 22, 1913, to "C. M. Jackson, Mgr.," and by which he promised to pay the payee two months thereafter the sum of $1,000.00. The note was endorsed by Jackson and delivered to plaintiff who filed the action about six months after its maturity. Defendant answered in about ten paragraphs in which he admitted signing the note to Jackson but alleged that it was executed in consideration of the purchase of ten shares of the capital stock of plaintiff of the par value of $100.00 per share which was agreed by Jackson to be delivered to him immediately upon the execution of the note and before its maturity. He further alleged that Jackson fraudulently represented to him that the book value of the stock was $150.00 per share and was actually worth that much, when in truth and in fact is was worth much less than that, and that he was thereby deceived and wrongfully induced to execute the note, and that it was without consideration. Other paragraphs attempted to rely upon wholly insufficient defenses, to which a demurrer was filed, but which is not shown to have been acted on. The reply, as amended, denied all affirmative defenses and further alleged that the agreement with defendant was to sell him fifty shares of its capital stock of the par value of $10.00 per share, at the price of $20.00 per share, and that with such understanding he agreed to purchase the stock upon those terms and executed his note to Jackson, who was a duly authorized managing agent of plaintiff. It was further alleged in the reply that plaintiff was to retain the stock as collateral security until the note was paid. There was also tendered with the reply fifty shares of plaintiff's capital stock which it issued to defendant on August 9, 1913, but which certificate it had retained under what it claimed was the agreement. Appropriate pleadings made the issues, and upon defendant's motion the case was transferred to equity and upon final submission the court rendered judgment for the full amount of the note with interest from its date, to reverse which defendant prosecutes this appeal.

There were only three depositions filed in the case; one given by E. I. Welch and one by C. M. Jackson, both of which were taken by plaintiff, and the other one was

given by defendant in his behalf. A motion to quash the deposition of Welch was sustained because of insufficient notice and the case was tried on the depositions of defendant and Jackson.

Defendant's testimony, given in a very incoherent as well as contradictory manner, in a way attempts to support his defense, but he testified that the only note he ever signed was dated, either in June or July, 1913, and was procured from him by Welch, whose deposition was quashed, and that it was executed for the purchase of capital stock in the defendant company under the terms and conditions which he alleged in his answer; that he never had any conversation with Jackson, nor did he execute any note to him, although in his pleadings he says that the fraudulent representations upon which he relies were made by Jackson at the time the note sued on was executed. When confronted with the note he acknowledged that he signed it, and on being asked "How do you explain the fact that this note signed by you bears date November, 1913, when you say the stock was purchased in June or July?" he answered, "That is what I don't know." Jackson testified that the sale of the stock was made by Welch who took defendant's note for $1,000.00, dated July 5, 1913, and due four months thereafter; that it was not paid at maturity but was sent to him by defendant, company, and he procured a renewal of it (which is the note sued on) and delivered the first one to defendant, and that at the time the whole transaction was again gone over and discussed and defendant thoroughly understood what he was purchasing and the price he was paying. So that, if defendant's testimony was not weakened by numerous contradictions appearing therein we would still have only his testimony for himself, and Jackson's testimony for plaintiff, with the burden upon him to establish his defense. Under such circumstances, we are not authorized to reverse the judgment of the chancellor in favor of plaintiff as to the terms of the sale.

But, if it were otherwise, there is a total failure by defendant to prove the falsity of the representations which he alleged induced him to sign the note. The only testimony in the record addressed to that issue was given by defendant and it was this: "Q. Do you know what this stock is worth of your own knowledge or what it was worth at that time? A. I do not. I only know what they claimed it was worth at that time and I know about what

they claim it is worth *now* from *information.* . . . Q. Mr. Cook asked you if you had any knowledge of the value of this stock at the time you bought it, and you said you had been informed something as to the value of it. Will you please state what your *information* is as to the value of this stock *at this* time?'' The question was objected to and exceptions taken to the answer, which was, "I *understand* it is worth something like 45c on the dollar." Clearly, that testimony, which is all there is in the record upon the subject, is the rankest sort of hearsay and wholly incompetent to establish the issue to which it was directed. Another equally serious objection to it is that it only purported to give defendant's *information* as to the value of the stock ''at this time,'' which was January 23, 1920, six years, two months and one day after the execution of the note sued on, and for that reason alone it was insufficient to establish the falsity of the representations relied on, were it not objectionable for the first reason given.

It may be that defendant made a bad investment, but this fact alone, without the establishment of other defenses legally sufficient to relieve him from the consequences of his contract, will not authorize a reversal of the judgment and it is accordingly affirmed, but on the filing of the mandate the court will correct the judgment so as to draw interest from the maturity of the note instead of from its date, which error was a clerical misprision.