Mitchell **ROWLAND**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 16, 1962.

Raymond C. Schultz, Paducah, for appellant.

John B. Breckinridge, Atty. Gen., William F. Simpson, Asst. Atty. Gen., for appellee.

MOREMEN, Judge.

Appellant, Mitchell Rowland, was convicted of obtaining property by false pretenses—a crime denounced by KRS 434.050—and was sentenced to confinement in the penitentiary for a period of one year.

In October 1960 Rowland went to a nursing home owned and operated by Mrs. Ouida Nance and told her that he was L. K. Johnson or L. J. Johnson (she was not sure about the initials) and that he was president of a union in Calvert City which was soliciting advertisements for the Calvert City telephone directory. While the proof is not too certain on this point, it appears that he was soliciting advertisements for telephone directory covers and the witness seems to have understood that. She entered into a contract for the purchase of advertising space and executed a check for $75 which she delivered to Rowland. The total contract price was $168.

At the trial Mrs. Nance testified that the check had been misplaced. She remembered that it had been endorsed by "Johnson President" but could not remember whether the name of the union appeared in the endorsement. Later she received four telephone directory covers which contained the advertisement. They were received, however, after appellant had been indicted. From direct examination one might draw the impression that she relied upon the representation that appellant was L. K. Johnson and was employed by the Central Trade and Labor Council of the western Kentucky area. However, when she was specifically cross-examined about the matter, it was definitely shown that she had not relied upon the fact that Rowland had impersonated Johnson, but was interested only in subscribing to the advertising medium. For instance, she testified:

"Q. Now, when—did the fact that he gave you this name whether it was L. K. Johnson Advertising Company or that he was L. K. Johnson, did that mean anything to you for purposes of giving him the $75 check and giving him the order? A. No.

"Q. In other words, it wouldn't have been any different if he had said he was from the Sun Democrat Advertising Company or whether he said he was John Doe? A. No, sir, it wouldn't have made any difference.

"Q. You didn't rely on that name? A. On the advertising.

"Q. You were just dealing with the man you were talking to? A. That is right."

However, again on re-direct examination she said:

"Q. Mrs. Nance, you testified on direct examination that these false statements were made by Mr. Rowland, that you believed them at the time. A. I did.

"Q. That you relied upon the truth of them. A. I did.

"Q. And had you known they were false you would not have signed the contract or given him your money, is that correct? A. Yes.

"Q. Then you did rely upon them in parting with your money? A. Yes. But I got my covers."

It appears that Mrs. Nance was easily led into supplying answers suggested by the form of the questions. Her testimony when considered in its entirety demonstrated that false impersonation by appellant was not a material element in inducing her to part with her money. She seemed to be interested only in obtaining advertising space and was content with her bargain and the performance of the supplier. The technicalities invoked by the use of the word "rely" seemed not to be recognized by her. When we look at the entire evidence in the record (only Mrs. Nance and L. K. Johnson testified) we are forced to the conclusion that the Commonwealth did not produce sufficient evidence to warrant submission of the case to the jury.

Subsection (1) of KRS 434.050 reads:

"Any person who, by any false pretense, statement or token, with intent to commit a fraud, obtains from another money, property or other thing which may be the subject of larceny, or who obtains by any false pretense, statement or token, with like intention, the signature of another to a writing, the false making of which would be forgery, shall be confined in the penitentiary for not less than one nor more than five years."

■ In Rand v. Commonwealth, 176 Ky. 343, 195 S.W. 802, we said:

"To constitute the crime of obtaining money or property by false pretenses, the following things must appear: (1) A false pretense; (2) the false pretense must be made by the defendant, or by some one, whom he has induced to make it; (3) the defendant must have had knowledge of the falsity of the statement, token, or pretense when he made it; (4) the person defrauded must have relied upon the pretense and been induced thereby to part with his property or money; (5) the property or money must have been obtained by the defendant or by some one in his behalf; (6) the defendant must have had an intent to defraud; (7) and, lastly, an actual defrauding must have resulted."

Our statute above quoted evolved from the common law offense of cheating and includes offenses which were distinguishable under the common law. It is pointed out in 22 Am.Jur., False Pretenses, § 2, false pretense and the common law cheat elements are often combined in statutory enactments. However, at common law, and now, false personation is a separate and distinct offense. 22 Am.Jur. False Pretenses, § 5. That common law offense is not covered by subsection (1) of KRS 434.050 which we have quoted above. It is covered by KRS 434.060, but that statute expressly limits the occasions where a person may be prosecuted for personating another, and the facts of this case do not place it under any category set forth. In addition, we have other special statutes dealing with false personation, such as marriage, KRS 402.090, or a registered voter, KRS 124.150, which have no application here.

■ A consideration of the testimony fails to convince us that Mrs. Nance relied upon any pretenses of appellant and was thereby induced to part with money or, for that matter, that an actual defrauding took place, both of which are necessary elements as set out in the Rand case above. The only offense shown was false personation by Rowland and because he was not Johnson as he represented himself to be, seemed to be a matter of small importance to the prosecuting witness.

We believe the Commonwealth failed to prove an offense had been committed under KRS 434.050 and that appellant's motion for a directed verdict should have been sustained.

The judgment is therefore reversed.