M. R. JACKSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

May 9, 1969.

Rehearing Denied Nov. 13, 1969.

**836**

James G. Begley, Danville, for appellant.

John B. Breckinridge, Atty. Gen., William O. Gilbreath, Asst. Atty. Gen., Frankfort, for appellee.

OSBORNE, Judge.

M. R. Jackson was convicted of obtaining money under false pretenses and received a sentence of two years. He appeals.

In March of 1967 Jackson approached the Boyle County American Legion Post and asked them to endorse him as a magazine subscription salesman. In return for their endorsement they were to receive a percentage of his sales. Jackson had sold magazines in Boyle County under the same arrangement the previous year. The Boyle County Post agreed. Under their endorsement, he sold subscriptions in the community for several months. One such subscription was sold to Ted Germann, Commander of the Boyle County Post. Mr. Germann purchased certain magazines to be sent to Friendship House, a local institution, for $21.50. A check for that amount was given to Jackson with the payee left blank. Subsequently Jackson put his name in as payee and cashed the check.

At the time Jackson appeared before the local American Legion Post to get the endorsement, he represented that he was associated with the Curtis Publishing Company and had authority to sell subscriptions for them.

However, a Mr. Chastain, with whom Jackson had previously been associated, testified that he had sent Jackson a letter in late November or December of 1966 terminating his relationship. Jackson denied receiving this letter. It was further shown that although Jackson had solicited magazine subscriptions from September of 1966 through the period he was in Boyle County and had taken money for substantial numbers of subscriptions, he had not forwarded such subscription orders and had retained the money received from such sales for his own uses. He had sent in one group of subscriptions early in the fall, however, they were accompanied by his personal check which was returned to the company marked N.G. Therefore, at the time he appeared before the Boyle County American Legion Post and represented that he was a subscription salesman for Curtis Publishing Company, a letter had been sent terminating him, and he had been soliciting subscriptions but retaining the money for his own use for several months.

Appellant first argues that he was entitled to a directed verdict because all the elements of obtaining money under false pretenses were not proved. Those elements are set out in Rand v. Commonwealth, 176 Ky. 343, 195 S.W. 802 (1917). There the court said:

"To constitute the crime of obtaining money or property by false pretenses, the following things must appear: (1) A false pretense; (2) the false pretense must be made by the defendant, or by some one, whom he has induced to make it; (3) the defendant must have had knowledge of the falsity of the statement, token, or pretense when he made it; (4) the person defrauded must have relied upon the pretense and been induced thereby to part with his property or money; (5) the property or money must have been obtained by the defendant or by some one in his behalf; (6) the defendant must have had an intent to defraud; (7) and, lastly, an actual defrauding must have resulted. * * *"

Appellant claims that he was not aware of the falsity of the representation, that

Germann did not rely on the representation, and that Germann was not actually defrauded.

His claim that he was not aware of the falsity is based on his testimony that he did not receive the letter terminating him as a representative of Curtis. However, since it was testified that the letter was mailed, the jury could well have believed that he had, in fact, received it. He also argues that the letter, which was to the effect that Chastain would no longer receive subscription orders from Jackson, was not really a termination. He also contends that the effect of the letter had been nullified by a meeting with Chastain which he testified occurred after the time Chastain sent the letter. However, Chastain said the meeting occurred several weeks before the letter was sent. All of this evidence was for the jury and from it they could have believed that Jackson indeed received the letter terminating him and that nothing occurred after the letter was sent to nullify it. Jackson's actions during this period would substantiate such a finding. Braswell v. Commonwealth, Ky., 339 S.W.2d 637 (1960).

■ He also argues that it was error to have allowed Chastain to testify about the letter when he admitted there was a copy in existence. He contends that the copy should have been required and testimony about it was inadmissible under the best evidence rule. The matter in issue was not the precise wording of the letter but that such a letter was sent. Therefore, it was not necessary to produce the copy. Marcum v. Commonwealth, Ky., 390 S.W. 2d 884 (1962); Hazel v. Dougherty, 207 Ky. 89, 268 S.W. 823 (1925).

Germann testified that he was relying on his past dealings with Parker and the fact that he said that he was working under the same arrangement as he had the previous year. Appellant points out that he was not working for the same company this year and that Germann was not relying on whom he worked for. Germann was relying on the representation that Jackson was working for some company and was authorized to sell subscriptions under a plan whereby the local American Legion Post would receive a percentage of the subscriptions that were sold. The intricacies of corporation identity and interrelation may not be known to the average consumer, but he relies on the fact that the seller is empowered in some way to sell the merchandise involved. Therefore, we believe that this objection is without merit.

■ Appellant argues that since Curtis has decided to honor the subscriptions involved no defrauding took place. However, the fact that Curtis is making a gift does not overcome the fact that Germann paid for magazines which he probably could not obtain as a matter of right. Furthermore, the local American Legion Post did not receive any percentage of the sales and this was in part the basis for Germann's purchase. Therefore, we find the court's action in denying a directed verdict proper.

■ Appellant alleges three other grounds for reversal: (1) that evidence of other related crimes should not have been admitted; (2) that the trial judge should have granted a continuance, and (3) that the successor trial judge should have granted his motion for a new trial. We will discuss these in the above order. Evidence of other related crimes, that is, the other subscriptions sold and the failure to transmit money or subscriptions to Curtis was essential here to show the crime charged. Without such evidence the Commonwealth could not have shown intent or knowledge. Evidence of other interrelated crimes is admissible under such circumstances. Lee v. Commonwealth, Ky., 242 S.W.2d 984 (1951). In addition, the trial court admonished the jury many times that this evidence was to be considered only as it related to the crime charged. We find no error in the admission of this evidence.

■ We also find no error in the trial judge's action on the motion for a continu-

ance. After the indictment was returned the case was set for trial. On the original trial date defendant and his counsel did not appear at the time set. After waiting some time, the trial judge allowed the several out-of-state witnesses to leave. Appellant and his counsel appeared an hour and a half later and said they had had car trouble but hadn't called because that would have made them later. A new date was then set. At that time defendant appeared by himself with an affidavit that his employed counsel could not appear because of several chronic ailments. The trial judge denied a further continuance because of the difficulty of again obtaining the out-of-state witnesses, and appointed James Begley as counsel for appellant. Mr. Begley had appeared in the case several times on appellant's behalf though not as his counsel. Mr. Begley then moved for a continuance and was allowed until the next day. We can see no abuse of discretion under these circumstances. Mr. Begley was familiar with the case in some respects at least and spent part of the day interviewing the out-of-state witnesses. It is not shown in what particular way Mr. Begley could have better represented appellant with more time. And from a review of the record, we believe he provided an adequate defense. Further continuances might well have been prejudicial to the Commonwealth, who had twice obtained the attendance of out-of-state witnesses and might not have been able to a third time.

■ The trial judge died before passing on appellant's motion for a new trial. Appellant argues that the successor judge should not have ruled on this motion but should have automatically granted a new trial because he was not present during the trial, and therefore, was not aware of any error that might have occurred. RCr 11.32 provides for this situation. After providing that a successor judge may perform after verdict duties where the trial

was had before the previous judge, the rule further provides:

"* * * but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial."

After the trial judge died appellant filed a supplemental motion for a new trial arguing that the successor judge could not rule on the motion for a new trial because he was not there during the trial. The successor then overruled his motion for a new trial. Therefore, the successor judge must have been satisfied that he could properly rule on the motion and the rule leaves this matter in his discretion.

■ A motion for a new trial can raise questions that cannot adequately be reviewed on appeal. RCr 10.02 allows the trial judge to grant a new trial, "for any cause which prevented the defendant from having a fair trial, or if required in the interest of justice." Under this rule a trial judge might well have discretion to grant a new trial for causes which might not warrant reversal by this court, especially when such cause would not appear from the record of the trial. However, absent such a situation, the trial judge's authority would not differ from that of this court in reviewing the case on appeal and any error of the successor judge would be rendered non-prejudicial by our review of the same questions. Cf. Sanders v. Drane, Ky., 432 S.W.2d 54. The grounds raised by the appellant in his original motion were all matters which could be determined from the record. Furthermore, appellant had prepared for the trial judge those portions of the record he felt were particularly pertinent on his motion for a new trial. The successor judge had these before him in ruling on the motion. Appellant cites Connelly v. United States, 8 Cir., 249 F.2d 576 (1957), for the proposition that there might be a case where a

successor judge could not properly rule on a motion for a new trial. We agree, but this is not such a case. Carbo v. United States, 9 Cir., 314 F.2d 718 (1963).

Judgment affirmed.

All concur.