Coleman JONES, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 23, 1970.

As Modified on Denial of Rehearing
March 26, 1971.

Thomas D. Shumate, Shumate, Shumate & Flaherty, Richmond, for appellant.

John B. Breckinridge, Atty. Gen., Laura L. Murrell, John Browning, Asst. Attys. Gen., Frankfort; W. A. Wickliffe, Com. Atty., Harrodsburg, Caywood Metcalf, County Atty., Henry C. Cox, Lancaster, for appellee.

STEINFELD, Judge.

Coleman Jones was found guilty of obtaining property by false pretenses, a crime denounced by KRS 434.050, and he was sentenced to serve one year in the state reformatory. He appeals, claiming that the trial court erred in not sustaining his motion for a directed verdict and in admitting, over his objection, incompetent evidence. We affirm.

Asserting that there has been a violation of RCA 1.210(a) 2 the Commonwealth urges us to disregard certain arguments advanced by appellant. That rule states that appellant's brief shall contain:

"A '*Statement of the Questions Presented*', which shall state in the clearest and briefest form, and separately number, each of the principal questions involved on the appeal. The Court will not consider, except for special cause, questions not so set forth."

Appellant's "Statement of Questions Presented" reads:

"Did the trial court commit reversible error in failing to order a directed verdict for the appellant upon motions made at the conclusion of Commonwealth's evidence, and upon conclusion of all of the evidence, thereby prejudicing his substantial legal rights to a fair and impartial trial?

"Did the trial court commit reversible error in permitting the admission of incompetent and prejudicial evidence into the trial of this case, in clear violation of appellant's substantial legal rights to a fair and impartial trial?"

"* * * (W)e may not consider any error not set forth in appellant's Statement of Questions Presented". Cassinelli v. Begley, Ky., 433 S.W.2d 651 (1968); Travelers Indemnity Co. v. Patrick, Ky., 386 S.W.2d 256 (1964) and Snell v. Com., Ky., 420 S.W.2d 127 (1967). While we find the questions were not stated as clearly and

succinctly as we desire we hold there was sufficient compliance with the rule.

The indictment charged that in January 1967 Jones " * * * obtained from Emit Long, Jr., * * * 5,000 shares of stock in Kentucky National Life Insurance Company * * * ". Jones contended that the evidence showed that he did not obtain the stock, therefore, the proof is at variance with the indictment which is fatal to the prosecution. On this basis he moved for a directed verdict.

Jones was President of Kentucky National Life Insurance Company. Sometime before the alleged crime was committed Jones sold to Long 5,000 shares of stock in that company. Long testified that in January 1967 Jones came to his home and they discussed a scheme whereby Long would exchange his Kentucky National stock for stock in Pyramid Corporation.[1] He said that Jones represented that Robert Shaw, President of Pyramid, had agreed to pay $2.00 per share for the Pyramid stock and that this money would go into the treasury of a corporation being formed under the name of Professional Underwriters. In answer to another question Long said Jones stated that $2.00 per share was to be paid by Shaw for Kentucky National stock. Professional Underwriters was to operate an insurance agency. Jones and William E. Wells were to run the company and Long was to receive Professional Underwriters stock and to own no less than 25% of the outstanding stock at all times. Following that conversation Long endorsed his stock certificates in blank and delivered them to Jones. The shares were then exchanged for Pyramid stock. Long then traded that stock for shares in Professional Underwriters and received that stock. Professional Underwriters became insolvent and its stock worthless. Jones was associated in some way with Professional Underwriters until that connection was severed in January 1969.

Jones denied that he made such representations or arrangements. Shaw testified that he had not agreed to purchase the Pyramid National or Kentucky stock at $2.00 per share and of course he did not do so, however, he bought some stock at 85¢ per share. Jones testified that he and Wells owned stock in Professional Underwriters, that the money realized from the sale of Pyramid stock " * * * went to promoting the Professional Underwriters * * " and that he " * * * spent other money earned as a commission agent toward promotion of * * * " it. He insisted that this money " * * * was spent toward expenses for Professional Underwriters—expenses for myself and Mr. Wells, or anything involved in Professional Underwriters * * * because (they) were the owners of Professional Underwriters."

■ The claim for dismissal was based on " * * * the fact that the evidence that Jones never obtained Long's * * * stock, as was alleged in the indictment" created a fatal variance between the indictment and the proof. We reject this contention, first because there was testimony that Long endorsed his stock in blank and delivered it to Jones, and secondly Jones *obtained* it for the benefit of Professional Underwriters, a corporation in which he was financially interested. To convict of obtaining property by false pretenses " * * * the property need not be obtained by accused for himself, it being sufficient if, as a result of his false representations, it is delivered either for the benefit of the accused or for another's benefit." 35 C.J.S. False Pretenses § 25, p. 845. Also see Rand v. Com., 176 Ky. 343, 195 S.W. 802 (1917).

Appellant relies on Sturgill v. Com., Ky., 293 S.W.2d 730 (1956); Williams v. Com., 314 Ky. 33, 234 S.W.2d 148 (1950), and Lissenbee v. Com., 198 Ky. 639, 249 S.W. 782 (1923), to support his claim that " * * * The allegations of the indictment did not identify the act for which appellant

1. The name was changed later to American Pyramid Corporation.

was tried with sufficient certainty to make the prosecution herein a bar to another indictment against him by Long as to the Professional Underwriters transaction, or to put him upon notice of the offense for which he was tried."

■ In Sturgill the defendant was charged in the indictment with theft of copper wire owned by one George Evans when in fact the wire was owned by Glo-Valley Coal Corporation of which George Evans was the principal stockholder. In Williams the indictment charged the theft of an overcoat and other articles of clothing from a corporation. The evidence showed that the overcoat did not belong to the corporation and that " * * * the remaining evidence was insufficient to connect appellant with the theft of the one pair of shoes and two pairs of pants." In Lissenbee the indictment charged that the property taken belonged to a Felix Turner whereas the proof showed that the owner of the property taken was Felix Napier, a different man. These three cases were reversed because a misdescription of property taken or a misdescription of the name of the injured party " * * * does not put the defendant on notice of the offense for which he is being tried." The indictment in the case now before us showed clearly that Jones was being charged with fraudulently obtaining from Long the 5,000 shares of the Kentucky National stock and that this occurred in January 1967. Further clarity is not required.

■ Appellant insists that there was a lack of evidence showing the value of the Professional Underwriters stock at the time of the transaction. The alleged crime involved the false representation of an arrangement in which Shaw had agreed to pay $2.00 per share for certain stock, which monies were to capitalize Professional Underwriters. Long surrendered his Kentucky National stock in reliance on that representation. The evidence supplied the necessary elements announced in Rand v. Com., 176 Ky. 343, 195 S.W. 802 (1917), wherein we said:

"To constitute the crime of obtaining money or property by false pretenses, the following things must appear: (1) A false pretense; (2) the false pretense must be made by the defendant, or by someone, whom he has induced to make it; (3) the defendant must have had knowledge of the falsity of the statement, token, or pretense when he made it; (4) the person defrauded must have relied upon the pretense and been induced thereby to part with his property or money; (5) the property or money must have been obtained by the defendant or by someone in his behalf; (6) the defendant must have had an intent to defraud; (7) and, lastly, an actual defrauding must have resulted."

■ Lastly, appellant charges that testimony as to the value of Professional Underwriters stock almost three years after the time of the occurrence of the transaction in question was incompetent and appellant's objection thereto should have been sustained. Cited is Wright v. Inter-Southern Life Ins. Co., 193 Ky. 785, 237 S.W. 401 (1922), in which testimony as to the value of stock six years after the event from which the litigation arose was held inadmissible. Here the issue was the representation of an arrangement which proved nonexistent. The value of Professional Underwriters stock was affected by the money Jones represented Shaw had agreed to put into its treasury. It was proper to show that without said funds Professional Underwriters stock had become worthless.

■ Appellant claims that testimony of Emit Long, Jr. upon redirect examination should not have been admitted under the ruling in Davis v. Butler, 198 Ky. 795, 250 S.W. 126 (1923). The testimony was admitted subject to later introduction of proof that the Commonwealth stated would be introduced by other witnesses. Professor Wigmore wrote:

"Thus the fundamental rule, universally accepted, is that, with reference to facts whose relevancy depends upon

others, the order of presentation is left to the discretion of the party himself, subject of course to the general discretion of the trial Court (ante section 1867) in controlling the order of evidence. In other words, if an evidential fact offered has an apparent connection with the case on the assumption that other facts shall also be proved, it may be admitted. No objection, therefore, can be made merely on the ground that the other facts have not yet been evidenced." VI Wigmore on Evidence, 3d Ed., 504, section 1871.

There is no merit in this argument of appellant. CR 43.02(3). Thompson v. Mills, Ky., 432 S.W.2d 448 (1968).

■ Jones also argues that the testimony of Edgington and Rankin concerning dealings they had with Jones with respect to stock they owned should not have been admitted. He cites Queen v. Com., Ky., 434 S.W.2d 318 (1968), which we find inapplicable because it did not relate to the admission of evidence. All of the testimony to which objection was made related to the general scheme of Jones' effort to obtain control of the stock of Kentucky National. It did not involve unrelated transactions as in Boggess v. Com., Ky., 447 S.W.2d 88 (1969). Both Boggess and Queen were prosecutions for alleged violations of KRS 292.320(1) but here the prosecution is under KRS 434.050. Its introduction was proper to show that Jones intended to and did defraud Long. Pulliam v. Gentry, 206 Ky. 763, 268 S.W. 557 (1925); 37 C.J.S. Fraud § 113, p. 424.

The judgment is affirmed.

All concur.